**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDDIE SHACKLEFORD,** | : | **CIVIL NO:4:10-CV-1967** |
| | : | |
| **Petitioner,** | : | **(Judge Caldwell)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WARDEN D. EBBERT,** | : | |
| | : | |
| **Respondent.** | : | |

## REPORT AND RECOMMENDATION

### I.     Introduction

This is a habeas corpus petition brought by Eddie Shackleford, a prisoner incarcerated at the Allenwood Federal Correctional Institution in White Deer, Pennsylvania. In his petition Shackleford claims that the United States Parole Commission ("USPC") violated his due process rights by conducting a parole revocation hearing based on an unadjudicated misdemeanor charge and violated the Constitution's *ex post facto* clause by erroneously applying 2000 parole guidelines at his 2009 revocation hearing.

Shackleford's *ex post facto* argument stems from the immutable fact that the Petitioner's latest encounter with the criminal justice system simply represents the culmination of three decades of entanglements with the courts. Thus, Shackleford argues that this latest parole action offends *ex post facto* principles because his

2009 parole revocation arises out of convictions for various violent crimes reaching back to 1982, when Shackleford was convicted in the District of Columbia of armed robbery. (Doc.1.) In his current habeas corpus petition, Shackleford requests immediate release. (Id.)

For the reasons set forth below, it is recommended that Shackleford's petition be denied.

## II.     Statement of Facts and of the Case

The story of Eddie Shackleford's 30-year journey from the streets of Washington, D.C., to his current incarceration as a parole violator in Pennsylvania began in February of 1982 when Shackleford was sentenced to a three to nine year prison term by the Superior Court of the District of Columbia for his role in armed robbery. (Doc. 7, Ex. 1, Judgment and Commitment Order.)  Four months later, on June 28, 1982, Shackleford was sentenced again in the Superior Court of the District of Columbia to a consecutive 27-year prison term following his conviction on another armed robbery charges. (Id., Ex. 2, Judgment and Commitment Order.) As a result of these two District of Columbia armed robbery convictions, Shackleford's sentence was calculated by the  Federal Bureau of Prisons to an aggregate 36-year prison term. (Id., Ex. 3, BOP SENTRY Report, Sentence Monitoring Computation Data.)

Shackleford's District of Columbia convictions and sentences provided for release on parole, and over the course of the past three decades, parole has been conferred upon Shackleford on four separate occasions. In each instance, however, Shackleford has violated the terms of his parole, often through renewed criminal conduct. This pattern of recidivism has compelled parole officials to repeatedly revoke Shackleford's release.

Thus, parole records reveal that Shackleford's parole was first revoked in November 1999 due to his use of drugs and illegal possession of firearms. (Id., Ex. 4, 11/08/1999 Notice of Board Order, use of drugs and a firearm.) Released, Shackleford subsequently had his parole revoked for a second time in July of 2002 when he was found to have reverted to use of drugs, failed to submit to drug testing and became involved in another attempted robbery.(Id., Ex. 5, 07/23/2002 Notice of Action.) This 2002 parole revocation related to conduct which also resulted in an additional criminal conviction for Shackleford. Specifically, on October 6, 2003, Shackleford was sentenced to a two-year prison term and three years supervised release by the District of Columbia Superior Court for attempted robbery . (Id., Ex. 3, BOP SENTRY Report, Sentence Monitoring Computation Data p. 7-8.)

Despite these two prior parole violations, and this new attempted robbery conviction, Shackleford was once again released from custody following the service of an additional jail term. However, Shackleford was unable to conform his conduct to the dictates of the law. Thus, by December 2007 Shackleford incurred a third parole revocation when he was found to have once again engaged in use of drugs, failed to obey drug aftercare conditions, failed to submit to drug testing, and failed to report as directed. (Id.,Ex. 6, 12/28/2007 Notice of Action.) Following this 2007 revocation, Shackleford was briefly incarcerated before being release on parole by the United States Parole Commission on April 4, 2008. (Id., Ex. 7, Parole Certificate.)

One month later, in May 2008, Shackleford was reportedly indulging in a array of new parole violations. Thus, by May 16, 2008 Shackleford's U.S. probation officer reported that Shackleford had violated parole conditions by failing to report for supervision within three days of release; failing to meet with his officer as directed; failing to give truthful information; repeatedly using cocaine; failing to attend counseling sessions; and failure to submit drug tests. (Id., Ex. 8, Probation Office Letter, pp. 1-3.)

These parole violations were not limited, however, to a wholesale failure to comply with the conditions of his release. Regrettably, they also entailed new

reported forays into crime. Thus, the probation officer also reported that Shackleford had been charged in Prince George's County, Maryland District Court with 23 counts of theft for misuse of a company gas credit card totaling $4,700. (Id.)

Beyond the depth, extent and pervasiveness of these parole violations, there were other troubling aspects to this, Shackleford's, fourth parole revocation. Shackleford's parole violations began immediately upon his April 4, 2008 release from custody. (Id.) Indeed, within five days of his release, by April 9, 2008, Shackleford had reverted to cocaine use and was testing positive for controlled substances. (Id.) Within 11 days of his release, by April 15, 2008, Shackleford had largely absconded and failed to appear for meetings with his probation officer. (Id.) Within 25 days of his release, by May 1, 2008, Shackleford had allegedly returned to criminal conduct, stealing from his employer. (Id.)

On July 3, 2008, the Parole Commission issued a parole violator warrant for Shackleford. (Id., Ex. 9, Warrant Application; see also Ex. 10, Warrant.) One month later, on August 13, 2008, Shackleford was arrested on the violator warrant. (Id., Ex. 11, Warrant Return.) Following his arrest, on August 15, 2008, Parole Commission Hearing Examiner Scott Kubic conducted a probable cause hearing for Shackleford at the District of Columbia jail. (Id., Ex. 12, Probable Cause

Hearing Digest.) In Shackleford's case, this initial hearing resulted in a finding of probable cause to believe that he had committed parole violations and a final revocation hearing for October 20, 2008.(Id.)

This October 20 hearing was later continued at Shackleford's attorney's request.( Id., Ex. 13, Memo Regarding Hearing; see also Ex. 14, Continuance of Hearing; and Ex. 15, 11/04/2008 Notice of Action.) Ultimately, Shackleford received a revocation hearing on June 11, 2009, at the D.C. Correctional Treatment Facility. (Id., Ex. 16, Hearing Summary.) This June 2009 hearing was presided over by Parole Commission Hearing Examiner Scott Kubic, the same examiner who conducted Shackleford's initial probable cause hearing, and Shackleford was represented by appointed counsel at this hearing. At Shackleford's revocation hearing, the Petitioner's supervising probation officer, and Grace Taylor, the office manager at Shackleford's former employer, appeared as witnesses. (Id.) Ms. Taylor testified under oath at the proceeding concerning the allegation that Shackleford had stolen from his employer by misusing a gas credit card, and was cross-examined by Shackleford's attorney. (Id.)

At the conclusion of the hearing, Hearing Examiner Kubic recommended that the Commission revoke Shackleford's parole, credit all time spent on parole, and reparole Shackleford after service of 32 months, or on April 12, 2011. (Id.) In

making the recommendation of a reparole date, the examiner used the reparole guidelines as provided at 28 C.F.R. § 2.81(a) and § 2.21. (Id.) The hearing examiner determined that Shackleford's reparole guideline range was 24-32 months to be served before release. (Id.) Upon further review, the Commission agreed with this recommendation and issued a notice of action on July 12, 2009, revoking Shackleford's parole and continuing him to a presumptive reparole date of April 12, 2011. (Id., Ex. 17, 07/12/2009 Notice of Action.)

This July 12, 2009, notice of action informed Shackleford, in clear and precise terms, of his administrative appellate rights, stating that he could appeal this decision to the Parole Commission within 30 days of the notice. (Id.) On August 12, 2009, the Commission received a document styled as an "emergency request for a stay" from Shackleford, seeking additional time to submit an administrative appeal to the Commission. (Id., Ex. 18, Request from Shackleford.) The Commission acted promptly, and favorably, upon Shackleford's request, granting that request on August 14, 2009, and notifying Shackleford that he had until October 1, 2009, to submit his appeal. (Id., Ex. 19, Letter to Shackleford.)

Despite specifically requesting an extension of time until October 1, 2009, to file an appeal of this parole revocation decision, Shackleford neglected to file a timely appeal of this decision with the Commission. Instead, Shackleford elected

to wait two months beyond this deadline and submit a tardy and delinquent appeal, dated December 7, 2009, that was received by the Commission on December 28, 2009. (Id., Ex. 20, Mot. Of Appeal.) On January 26, 2010, the Commission denied Shackleford's appeal as untimely. (Id., Ex. 21, Denial of Appeal.)

Shackleford took no action to further challenge this July 2009 parole revocation for another ten months, until September 21, 2010, when Shackleford filed this habeas corpus petition alleging due process and *ex post facto* violations. (Doc. 1.) The Respondents have filed a comprehensive response to this petition, (Doc. 7), and Shackleford has submitted a traverse in support of the petition. (Doc. 9.). Therefore, this matter is now ripe for resolution.

For the reasons set forth below, it is recommended that the petition be denied, as both premature, in that it brings unexhausted claims, and meritless in that the claims made by Shackleford fail on their merits.

### III. Discussion

### A. Habeas Relief–The Legal Standard.

In this case, Eddie Shackleford, a parole violator whose parole was revoked while serving various robbery sentences imposed by the District of Columbia Superior Court, has filed a petition for writ of habeas corpus challenging this Parole Commission action. While Shackleford has styled his petition as one

brought under 28 U.S.C. §2241, in fact because he "was convicted by a District of Columbia court, he is considered a state prisoner. See Madley v. United States Parole Comm'n, 278 F.3d 1306, 1309 (D.C.Cir.2002). Thus, although styled as a § 2241 petition, his petition should [be] treated as one filed pursuant to 28 U.S.C. § 2254." Robinson v. Reilly, 340 F. App'x 772, 773 (3d Cir. 2009).

Treated as a petition filed pursuant to 28 U.S.C. § 2254, Shackleford's petition is subject to the substantive and procedural standards that govern habeas petitions under §2254. Thus, Shackleford must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a . . court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a . . . court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available [to the petitioner];
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available [to the petitioner].

28 U.S.C. § 2254 (a) and (b).

### (1.)    Substantive Standards For Habeas Petitions

As this statutory text implies, prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief under §2254. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a . . . court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.  Typically, habeas relief will only be granted to prisoners in those instances where the conduct of some proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).

### (2).    Procedural Thresholds for Section 2254 Petitions.

### (a). Exhaustion of Remedies and Procedural Default.

Furthermore, prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites

is a requirement that the petitioner "has exhausted the remedies available [to him]" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

Thus, in this specific factual context, where a habeas petitioner seeks to challenge a parole revocation decision, it is well-settled that a prisoner-petitioner should not be permitted to bring his complaint of procedural error in a parole determination unless he has first exhausted his administrative remedies. See United States ex rel. D'Agostino v. Keohane, 877 F.2d 1167 (3d Cir. 1989); United States ex rel. Sanders v. Arnold, 535 F.2d 848 (3d Cir. 1976). In this case, the Parole Commission has established a clear administrative appeal path for prisoners at 28 C.F.R. § 2.105(g), which allows a parole violator to submit an appeal of a decision to revoke parole. The appeal must be filed within 30 days of the USPC's notice of action regarding the decisions. Id. (incorporating the procedural requirements of 28 C.F.R. § 2.26.)

### (b). Statute of Limitations

Furthermore, prisoners seeking relief under Section 2254 must also timely file petitions seeking habeas corpus relief. The Antiterrorism and Effective Death

11

Penalty Act of 1996("AEDPA"), 28 U.S.C. § 2244 established a one-year statute

of limitations on the filing of habeas petitions by state prisoners. In pertinent part,

§ 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ
> of habeas corpus by a person in custody pursuant to the judgment of a
> State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created
> by State action in violation of the Constitution or laws of the United
> States is removed, if the applicant was prevented from filing by such
> State action;
>
> (C)  the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively applicable
> to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d
Cir.1998).

The calculation of this limitations period is governed by a series of well-

defined rules, including statutory tolling provisions. Beyond this tolling period

mandated by statute, it has also been held that AEDPA's one-year limitations

period is not a jurisdictional bar to the filing of habeas petitions; Miller, 145 F.3d

at 617-18, and, therefore, is subject to equitable tolling. Id.  at 618-19.Yet, while

equitable tolling is permitted in state habeas petitions under AEDPA, it is not

favored. As the United States Court of Appeals for the Third Circuit has observed:

"[E]quitable tolling is proper only when the 'principles of equity would make [the]

rigid application [of a limitation period] unfair.' Generally, this will occur when

the petitioner has 'in some extraordinary way ... been prevented from asserting his

or her rights.' The petitioner must show that he or she 'exercised reasonable

diligence in investigating and bringing [the] claims.' Mere excusable  neglect is

not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
>
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from
> asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the
> wrong forum.
> Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, Courts have held that: "In non-capital cases,

attorney error, miscalculation, inadequate research, or other mistakes have not

been found to rise to the 'extraordinary' circumstances required for equitable

tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for

equitable tolling where the statute of limitations was changed to shorten the time

for filing a PCRA only four months prior to the filing of the petition); <u>Taliani v.</u>

<u>Chrans</u>, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which

led to miscalculating the deadline, did not warrant equitable tolling)." <u>Id</u>. Courts

have also repeatedly rejected claims by *pro se* litigants that the burdens of

proceeding *pro se* should somehow exempt them from strict compliance with the

statute of limitations. <u>See, e.g.</u>, <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir.

2001);<u>United States v. Cicero</u>, 214 F.3d 199, 203 (D.C. Cir. 2000); <u>Felder v.</u>

<u>Johnson</u>, 204 F.3d 168, 171 (5th Cir. 2000). Thus, while tardy habeas petitioners

often invite courts to find extraordinary circumstances warranting equitable

tolling, those invitations are rarely embraced by the courts. <u>See, e.g.</u>, <u>Merritt v.</u>

<u>Blaine</u>, 326 F.3d 157 (3d Cir. 2003)(denying equitable tolling request); <u>Robinson</u>

<u>v. Johnson</u>, 313 F.3d 128 (3d Cir. 2002)(same).

**B.**      <u>**Shackleford's Petition Should Be Dismissed on Procedural**</u>
             <u>**Grounds As Unexhausted**</u>

Judged against these benchmarks, Shackleford's petition fails both

procedurally and on its merits. At the outset, Shackleford's petition should be

dismissed because it is  procedurally unexhausted.

In this case, the undisputed facts clearly demonstrate that Shackleford has

failed to exhaust his administrative remedies. In this case the Parole Commission

issued a notice of action on July 12, 2009, revoking Shackleford's parole and continuing him to a presumptive reparole date of April 12, 2011. (Id., Ex. 17, 07/12/2009 Notice of Action.) This July 12, 2009, notice of action informed Shackleford, in clear and precise terms, of his administrative appellate rights, stating that he could appeal this decision to the Parole Commission within 30 days of the notice. (Id.) Shackleford plainly understood those appellate rights since he filed a document styled as an "emergency request for a stay" in August 2009, seeking additional time to perfect his administrative appeal to the Commission. (Id., Ex. 18, Request from Shackleford.) The Commission acted promptly, and favorably, upon Shackleford's request, granting that request on August 14, 2009, and notifying Shackleford that he had until October 1, 2009, to submit his appeal. (Id., Ex. 19, Letter to Shackleford..) Yet, despite specifically requesting an extension of time until October 1, 2009, to file an appeal of this parole revocation decision, it is completely undisputed that Shackleford neglected to file a timely appeal of this decision with the Commission. Instead, Shackleford elected to submit a tardy and delinquent appeal, dated December 7, 2009, that was received by the Commission on December 28, 2009. (Id., Ex. 20, Mot. Of Appeal.) On January 26, 2010, the Commission denied Shackleford's appeal as untimely. (Id., Ex. 21, Denial of Appeal). Shackleford then took no action to further challenge

this July 2009 parole revocation for another ten months, until September 21, 2010, when Shackleford filed this habeas corpus petition alleging due process and *ex post facto* violations. (Doc. 1.)

On these facts, Shackleford's petition is plainly unexhausted, since Shackleford has never properly presented his claims through the administrative appeal process established by the Parole Commission. It is well-settled that exhaustion of available remedies is a prerequisite to filing a federal habeas petition under 28 U.S.C. § 2254(b)(1). As the United States Court of Appeals for the Third Circuit has held "[i]t is axiomatic that a federal habeas court may not grant a petition for writ of habeas corpus . . . unless the petitioner has first exhausted the remedies available [to him]." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). As the person seeking to invoke habeas relief, Shackleford bears the burden of establishing that he has exhausted state remedies, Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993), a burden which he simply has not met in this case. Therefore, as a threshold matter, dismissal of this petition is appropriate on exhaustion grounds.[1]

---

[1]In addition to being unexhausted, Shackleford's claims may well be time-barred by the one-year statute of limitations which applies to habeas petition. That limitations period begins to run" from the latest of . . . (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). In this case the

**C.**     **Shackleford's Petition Fails on Its Merits**

**1.**     **Shackleford's Due Process Claim Is Unavailing**

In any event Shackleford's petition fails on its merits. At the outset, Shackleford advance a due process claim. This claim is premised upon Shackleford's assertion that he has some constitutional right to parole, a right which was violated by the Commission's decision to revoke his release based upon unadjudicated criminal conduct.

This argument fails for several reasons. First, as a general matter Shackleford errs when he suggests that he has a constitutionally-protected liberty interest in parole. Quite the contrary, it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979); <u>see</u> <u>also</u> <u>Rauso v. Vaughn</u>, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole). Indeed, with respect to D.C. parole violators this Court has

---

final Parole Commission action which Shackleford challenges occurred on July 12, 2009. Here, the record shows that Shackleford did not file his habeas petition until he placed it in the prison mailbox on September 16, 2010, for delivery to the Scranton Clerk of Courts. (<u>Id</u>., Ex. 23, Declaration of Susan Albert ¶ 5; Copy of Envelope (Attach. 3 to Ex. 23).) Thus, 14 months elapsed between this Commission action and Shackleford's petition.

aptly described the nature of the due process rights to which they are entitled, stating:

> It is well settled that the determination of eligibility for parole for a D.C. prisoner has been committed by Congress to the discretion of the Commission. United States v. Addonizio, 442 U.S. 178 (1979); Campbell v. United States Parole Commission, 704 F.2d 106 (3d Cir.1983). Because the Constitution itself does not create any liberty interest in parole, such an interest must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C.Code offenders even after they are transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. See, e.g., McRae v. Hyman, 667 A.2d 1356 (D.C.1995) (holding that the District's parole scheme confers discretion to grant or deny parole, and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C.Cir.1996) (holding that the D.C. parole statute and regulations do not create any liberty interest in parole). However, "[a] legislative grant of discretion does not amount to a license for arbitrary behavior." Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980). "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (internal quotation omitted).

Dorsey v. U.S. Parole Comm'n, No. 05-1300, 2005 WL 1683658,* 2 (M.D.Pa. July 19, 2005).

Furthermore, Shackleford errs when he suggests that the consideration of unadjudicated criminal conduct by parole officials offends due process. Quite the contrary, it is entirely clear that the Parole Commission may use unadjudicated

crimes to revoke an offender's parole. <u>See</u> <u>Bowen v. U.S. Parole Commission</u>, 805 F.2d 885, 887 (9th Cir. 1985); <u>Mullen v. U.S. Parole Commission</u>, 756 F.2d 74 (8th Cir. 1985); <u>Whitehead v. U.S. Parole Commission</u>, 755 F.2d 1536 (11th Cir. 1985); <u>Taylor v. U.S. Parole Commission</u>, 734 F.2d 1152, 1155 (6th Cir. 1984). Given that Shackleford has no constitutional due process right to parole, and that the Commission may properly consider unadjudicated crimes in revoking parole, there is nothing about this particular parole revocation decision that is arbitrary or capricious and otherwise violates due process. Indeed, the Parole Commission decision to revoke parole for this Petitioner, a four-time parole violator who committed multiple new violations in the span of one month following his parole release, was entirely appropriate. In the Court's view, rather than reflecting arbitrary action, this Parole Commission judgment appears to represent a careful, informed balancing of the interests of both the inmate and society. It was, therefore, the very essence of informed, discretionary decision-making which is the duty and responsibility of the Parole Commission.

> ## 2. **Shackleford Cannot Sustain an *Ex Post Facto* Clause Claim In This Case**

Nor can Shackleford advance an *ex post facto* clause claim in this case. The *ex post facto* clause of the United States Constitution generally "prohibits

Congress and the states from enacting any law that 'imposes a punishment for an act which is not punishable at the time it was committed; or imposes additional punishment to that then prescribed . . . .'" (citation omitted). Artez v. Mulcrone, 673 F.2d 1169, 1171 (10th Cir. 1982). In Collins v. Youngblood, 497 U.S. 37 (1990), the Supreme Court explained that to be *ex post facto*, a law must either punish as a crime an act previously committed which was innocent when done; make more burdensome the punishment for a crime after its commission; or, deprive one charged with a crime of any defense that was available when the act was committed. Youngblood, 497 U.S. at 52. As the Court explained in California Depart. of Corrections v. Morales, 541 U.S. 499 (1995), the clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Morales, 541 U.S. at 504. Thus:

> [T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor ... on whether an amendment affects a prisoner's '*opportunity* to take advantage of provisions for early release,'... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

> Morales, 541 U.S. at 506, n.3 (emphasis original)

By eschewing an *ex post facto* analysis which focuses on some ambiguous or theoretical sort of disadvantage,  the Supreme Court has formulated in the field of parole revocations an *ex post facto* standard that examines whether the

retroactive application of change in a parole regulation creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes" for the particular inmate challenging the law. Garner v. Jones, 529 U.S. 244, 250 (2000) The petitioner bears the burden on this issue: he "must show that *as applied to his own sentence* the law created a significant risk of increasing his punishment." Garner, 529 U.S. at 255 (emphasis added). Therefore, a petitioner who challenges parole decisions on *ex post facto* grounds has the heavy burden of showing that, when applied to his case, the use of these guidelines significantly risked an increase in his punishment in violation of the *ex post facto* clause. See Blair-Bey v. Quick, 159 F.3d 591, 592 (D.C. Cir. 1998); Richardson v. Pennsylvania Board of Probation and Parole, 423 F.3d 282, 288 (3d Cir. 2005) ("[A] 'speculative and attenuated possibility. . . of increasing the measure of punishment' is not enough.")(quoting California Depart. of Corrections v. Morales, 514 U.S. 499, 509 (1995).

Applying this standard we cannot find that Shackleford has carried his burden of proving that the revocation decision in his case was the product of changed and shifting parole guidelines. Rather, upon reviewing the record, we are left with the firm conviction that Shackleford's revocation ruling was a function of his own thirty-year career of crime, and represent a reasonable application of the

law to the stark facts of this case, which presented the Parole Commission with a four-time parole violator, who upon release had immediately violated a host of parole conditions and indulged in new crimes. Since Shackleford's parole revocation is a function of his relentless recidivism, rather than the product of shifting guidelines, his *ex post facto* clause claim fails.

## IV. <u>Recommendation</u>

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her

discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of January, 2011.

***<u>S/Martin C. Carlson</u>***
Martin C. Carlson
United States Magistrate Judge
